IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MOHAMMED A. SALEH,

        Petitioner,

v.                                    Case No. 5:21-cv-00185

KATINA HECKARD, Warden,
FCI Beckley,[1]

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1).   This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).   For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this § 2241 petition and this civil action from the docket of the court for lack of jurisdiction.

## BACKGROUND AND PETITIONER'S CLAIM

### A.    Petitioner's conviction and sentencing.

Petitioner is a federal prisoner, who is presently incarcerated at the Federal Correctional Institution at Beckley, West Virginia ("FCI Beckley"), following his 1996 conviction by a jury in the United States District Court for the Southern District of New

---

[1]  Due to the change in the Warden at FCI Beckley, the Clerk is directed to modify the docket sheet, including the short citation, to reflect the name of the new Warden as the proper respondent.

York on one count each of seditious conspiracy, in violation of 18 U.S.C. § 2384 (Count One), bombing conspiracy, in violation of 18 U.S.C. § 371 (Count Five), and attempted bombing, in violation of 18 U.S.C. §§ 844(i) and 2 (Count Six).   These charges arose out of a broad conspiracy, involving at least 10 members, to "conduct a campaign of urban terrorism," including the 1993 bombing of the World Trade Center, the murder of a New York Rabbi, attempted bombings of other buildings, bridges, and tunnels in New York City, and the attempted murder of Hosni Mubarak, the former President of Egypt. *United States v. Rahman*, 189 F.3d 88, 103-04 (2d Cir. 1999).[2]

Evidence at trial implicated Petitioner in a plot to bomb the Holland and Lincoln Tunnels and the United Nations Headquarters through his June 22 and 23, 1993 sale of diesel fuel from gas stations he owned in Yonkers, New York, which was to be used to fuel the bombs.   *Id*. at 110.   The government's evidence established that Petitioner was fully aware of the objective of the conspiracy, the plans for the bombings, and his co-conspirators acknowledged that he was "an important supporter of *jihad* activities who might assist the bombing campaign."   *Id*.   However, Petitioner denies knowing of the activities for which the fuel was to be used.

Following the purchase of the fuel, other members of the conspiracy gathered at a safehouse to mix the fuel with fertilizer and determine the placement of the bombs and timers.   *Id*. at 111.   However, at approximately 2:00 a.m. on June 24, 1993, agents of the

---

2   Much of the procedural history herein is derived from this opinion of United States Court of Appeals for the Second Circuit ("Second Circuit" or "appellate court") affirming the judgment of the district court on direct appeal, as well as subsequent opinions of the sentencing court and the Second Circuit concerning Petitioner's post-conviction filings, which are part of the public docket in those matters of which this court may take judicial notice.   *See* Fed. R. Evid. 201; *See Goldfarb v. Mayor & City Council of Balt*., 791 F.3d 500, 508-09 (4th Cir. 2015) ("[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'")

Federal Bureau of Investigation ("FBI") raided the safehouse and thwarted the bombing campaign. *Id.* Those present were arrested and the bomb materials and plans were seized. *Id.* Petitioner had been arrested a few hours earlier at his Yonkers apartment. *Id.* Upon his arrest, Petitioner denied selling fuel to the men, but admitted that one of the alleged conspirators, who was serving as an informant for the government, had demanded fuel on two occasions. *Id.* There was also evidence that, following his arrest, Petitioner contacted one of his employees from prison and requested that he destroy receipts related to the sale of the fuel and told him that it would be "dangerous" if he failed to follow his instructions. *Id.* Petitioner did not testify at the trial, which lasted nearly nine months.

At sentencing, on January 17, 1996, the district court used the November 1, 1992 edition of the then-mandatory United States Sentencing Guidelines ("U.S.S.G.") to determine Petitioner's sentence because that version, which was applicable at the time of the crimes, was more favorable to the defendants than the 1996 version in place at the time of sentencing. As noted in the Second Circuit's opinion on direct appeal:

> The Guidelines provide that the base offense for a conspiracy (unless covered by a specific offense guideline) is the base offense level for the substantive offense that the defendant conspired to commit. *See* U.S.S.G. § 2X1.1 & comment. (n.2). However, the Guidelines do not specify a base offense level for the generalized offense of sedition, nor for the two specific goals of the conspiracy charged in Count One—levying war against the United States and opposing by force the authority of the United States. The District Court therefore turned to U.S.S.G. § 2X5.1, which provides that if the offense is a felony for which no guideline has been issued, the sentencing judge is to apply "the most analogous offense guideline," so long as one is "sufficiently analogous." [Footnote omitted]. *Id.* The Court determined that the treason guideline, *id.* § 2M1.1, provided the most appropriate analogy because the jury had explicitly found, in answer to a question on the verdict form, that one of the goals of the seditious conspiracy had been "to wage a war of urban terrorism against the United

3

States." Tr. 20660. The treason guideline states that "if the conduct is tantamount to waging war against the United States," a base offense level of 43 should apply, *id*. § 2M1.1(a)(1).

*Rahman*, 189 F.3d at 145-46.   Thus, the district court used level 43 as the base offense level for Petitioner's guideline calculation.   *Id.*

Next, the district court considered adjustments to the guideline level.   As pertinent to Petitioner's sentence, the Second Circuit's opinion noted:

> Judge Mukasey first considered a downward adjustment pursuant to U.S.S.G. § 2X1.1(b)(2), which authorizes a three-level reduction for uncompleted conspiracies (in the absence of a specific offense guideline). He reasoned that this inchoate offense reduction is to be determined individually as to each defendant. * * * However, Elhassan, Saleh, and Khallafalla were each given a two-level increase for obstruction of justice, pursuant to *id*. § 3C1.1, resulting in an adjusted offense level of 42.

*Id*. at 146.   The district court then applied the Guideline's "grouping" rules, applicable where a defendant is convicted of multiple counts.   As explained by the appellate court:

> The Court recognized that Counts One (seditious conspiracy), Five (overall bombing conspiracy), and Six (Spring 1993 attempted bombing) should be grouped together, *see id*. § 3D1.2, and that the offense level for that group was the adjusted offense level (adjusted separately for each defendant) for Count One, since that count was the most serious of the counts included in the group. *See id*. § 3D1.3(a).   Normally, the next step would have been to increase the adjusted offense level for each defendant's Count One "group" to reflect convictions on other counts, grouped into their appropriate groups, but in the circumstances of this case, the grouping rules called for no increases above each defendant's adjusted level for the Count One Group.

*Id*. at 146-47.   Thus, Petitioner's guideline level remained at 42, rendering a guideline range of 360 months to life in prison.   The district court determined that no departure from that range was warranted.   *Id*. at 147.   However, as further noted by the appellate court:

4

> The Court's next step was to notice the extent to which the statutory maximums for the counts on which each defendant was convicted limited the Court's authority to cumulate sentences in order to reach the total punishment called for by the Guidelines.    In taking this step, the Court took into account U.S.S.G. § 5G1.2(d), which specifies that whenever the sentence imposed on the count carrying the highest statutory maximum (here, 20 years for Count One, *see* 18 U.S.C. § 2384, for all defendants except Abdel Rahman and Nosair) is less than the total punishment range specified by the Guidelines (which was true for all defendants, since the bottom of the lowest of the total punishment ranges for any defendant was 24 ⅓ years), sentences are to be imposed consecutively "to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). The Court discussed with counsel whether the Guidelines' requirement of consecutiveness to reach the total punishment applied to Counts Five and Six, which had been properly grouped with Count One, *see* Tr. 41–47 (Jan. 10, 1996), but ultimately decided that consecutiveness was required.   No consideration appears to have been given as to whether the circumstance of imposing consecutive sentences on grouped counts, considered alone or with other factors in the case, warranted a departure. * * * The three defendants whose guideline punishment range was 30 years to life, were all convicted on counts carrying an aggregate maximum of 35 years—20 years (Count One) (seditious conspiracy), 5 years (Count Five) (overall bombing conspiracy), and 10 years (Count Six) (Spring 1993 attempted bombing).

*Id.* at 147, 149.   Therefore, pursuant to U.S.S.G. § 5G1.2(d), the district court determined that it was required to sentence Petitioner to consecutive terms of imprisonment and sentenced him at the statutory maximum for each offense, resulting in an aggregate sentence of 35 years.   *Id.* at 149.   Petitioner's judgment was entered on January 17, 1996. *United States v. Saleh*, 1:93-cr-181-WHP-8, ECF No. 510 (Jan. 17, 1996).

### B.    Petitioner's direct appeal.

As relevant here, on direct appeal to the Second Circuit, Petitioner challenged the use of the treason guideline as being analogous to the offense of seditious conspiracy, as well as the finding that he was subject to consecutive sentences on all counts under U.S.S.G. § 5G1.2(d).   While the appellate court was troubled by the fact that the counts

subject to consecutive sentences arose out of conduct that was part of the seditious conspiracy, the court ultimately found as follows:

> After careful consideration, we conclude that the use of the guideline for treason tantamount to waging war against the United States as analogous to the conduct of the defendants constituting the Count One offense was authorized by the Guidelines and did not violate any protected right of the defendants. As a matter of language and logic, treason by waging war is surely analogous to the offense of a seditious conspiracy that includes as a goal levying war against the United States. Nothing in the Guidelines precludes either the use of the treason analogy or the sentence calculations that resulted from it. Indeed, the Guidelines call for precisely the calculations that Judge Mukasey made, once the treason guideline was selected. The Commission could have provided that sentences on any offenses grouped for purposes of section 3D1.2 are exempt from the consecutiveness requirement of section 5G1.2, but it has not done so. We see neither a statutory bar to the treason analogy nor a constitutional bar. We can be certain that the Framers, in imposing procedural limits on the prosecution of the offense of treason, never contemplated the Sentencing Guidelines. But as long as those procedural limits are observed when the substantive offense of treason is prosecuted, we do not believe that they are applicable to the determination of punishment for what we have held to be the distinct offense of seditious conspiracy, even when a goal of that conspiracy is waging war against the United States.
>
> Nor do we believe, apart from regulatory, statutory, or constitutional limits, that the use of the treason analogy is unjust. * * * We agree with Judge Mukasey's reasoning. The defendants were neither convicted of treason nor punished for treason. In view of the fact that their offense involved waging war against the United States, the guideline covering treason "tantamount to waging war against the United States" was found most analogous. Even though "most analogous," that guideline would not be applied unless it was "sufficiently analogous." U.S.S.G. § 2X5.1. We agree with Judge Mukasey's conclusion that the defendants' conduct satisfied both tests.

*Id.* at 151-53. The appellate court agreed that the plot to bomb tunnels, bridges, and buildings in New York City was "tantamount to waging war" on the United States. *Id.* at 154.

The appellate court also discussed at length the propriety of imposing consecutive maximum sentences under the circumstances presented in this case and whether such

sentence stacking was required or merely discretionary.   The court ultimately determined that the only discretion permitted to the district court in this circumstance is through a departure to concurrent sentences, which the district court chose not to do. *Id.* at 154-57.

On appeal, Petitioner also challenged the failure to grant him a two-level reduction for a minor role in the offense under U.S.S.G. § 3B1.2(b).   The appellate court noted that "[a] reduction will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' or 'minimal' as compared to the average participant in such a crime."   189 F.3d at 159 (citing *United States v. Ajmal,* 67 F.3d 12, 18 (2d Cir. 1995)).   The appellate court upheld the district court's finding that each member of the conspiracy "was willing to do what was necessary for him to do and that no members was significantly less culpable than the average participant therein."   *Id.* at 159-60.   Accordingly, the denial of a minor role reduction for Petitioner was affirmed by the appellate court.   *Id.*

### C.    Petitioner's prior post-conviction filings.

On January 9, 2001, Petitioner filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 in his sentencing court.   *Elgabrowny v. United States*, Nos. 1:93-cr-181/1:01-cv-169, 2003 WL 22416167 (S.D.N.Y. Oct. 22, 2003).[3]   Although Petitioner's § 2255 motion was clearly filed more than one year after his criminal judgment became final, his motion principally relied upon the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to challenge his sentences and the

---

3   Several of Petitioners co-defendants also filed § 2255 motions around the same time.   The district court collectively ruled on the motions in one opinion, with co-defendant Elgabrowny being listed as the lead defendant in the case style in the order.

motion was filed within one year of the *Apprendi* decision.   *See* 28 U.S.C. §§ 2255(f)(1) and (3).

However, the district court found that, notwithstanding the fact that *Apprendi* had no application to Petitioner's sentences, because the Supreme Court had not determined that *Apprendi* was retroactive on collateral review, it could not be used to provide Petitioner relief under § 2255.   2003 WL 22416167 at *1, *3.   The district court also denied Petitioner's claims of ineffective assistance of counsel.   *Id.* at *9-10.   Petitioner's § 2255 motion was denied and dismissed on October 22, 2003.   *Id.* at *14.

On June 8, 2005, Saleh filed what amounted to a second or successive § 2255 motion and then filed a petition seeking authorization to file a successive § 2255 motion in the Second Circuit as required by 28 U.S.C. §§ 2244(b)(3) and 2255(h).   *Saleh v. United States*, No. 05-2763, *Petition for Writ of Extraordinary Relief* (2d Cir. June 8, 2005), and *Motion to File Successive Application* (2d Cir. Jul. 19, 2005).   By order dated August 15, 2005, the Second Circuit denied his petition to file a successive motion.   *Id.*, *Order Denying Motion to Permit Successive Petition* (2d Cir. Aug. 15, 2005).

On October 15, 2008, Petitioner filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure claiming an entitlement to an evidentiary hearing on his ineffective assistance of counsel claims following the Second Circuit's decision in *Raysor v. United States*, 647 F.3d 491 (2d Cir. 2011).   The district court ultimately found the motion to be procedurally and substantively deficient and denied it on July 31, 2014.   *Saleh v. United States*, Nos. 1:93-cr-181/1:01-cv-169, 2014 WL 3855022 (S.D.N.Y. Jul. 31, 2014).

On December 1, 2017, Petitioner filed a second Rule 60(b) motion seeking a sentence reduction under Amendment 794 of the Guidelines concerning the minor role reduction addressed in U.S.S.G. § 3B1.2, which became effective on November 1, 2015. As noted by the district court in its opinion, Amendment 794 "clarified that the role reduction is appropriate if the defendant was 'substantially less culpable than the average participant in the criminal activity,' and that the 'average participant' specifically refers to the defendant's 'co-participants in the case at hand[,]'" rather than an average participant in such a crime, as previously held by the Second Circuit *Saleh v. United States*, Nos. 1:93-cr-181/1:01-cv-169, ECF No. 1195 at 2 (S.D.N.Y. Jan. 15, 2021) (quoting *United States v. Kirk Tang Yuk*, 885 F.3d 57, 88 n.16 (2d Cir. 2018)).

The district court first found that Petitioner's Rule 60(b) motion amounted to an unauthorized second or successive § 2255 motion that was procedurally barred from review. *Id.* at 4-5. Additionally, the court found that, even if it could address the merits of the motion, Amendment 794 is not retroactive and, thus, the court lacked the power to modify Petitioner's sentence. Accordingly, the district court denied the second Rule 60(b) motion on January 15, 2021. *Id.* at 7.

On February 10, 2021, the Second Circuit again denied Petitioner authorization to file a second or successive § 2255 motion, this time relying on the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019). *See Saleh v. United States*, No. 19-3223 (2d Cir. Apr. 5, 2021). In its opinion, the Second Circuit panel noted that *Johnson* and *Davis* had no specific bearing on Petitioner's counts of conviction or his sentences and did not announce a new

rule of constitutional law with respect to the general proposition of the vagueness of a criminal statute, which was well-settled at the time of Petitioner's conviction.   *Id.* at 2.

Presently pending in Petitioner's sentencing court are motion for reconsideration of the denial of his Rule 60(b) motion concerning Amendment 794 and a motion for reduction of sentence under 18 U.S.C. § 3582(c) seeking compassionate release for extraordinary and compelling reasons due to the Covid-19 pandemic.   *Saleh v. United States*, Nos. 1:93-cr-181, ECF Nos. 1207 and 1213.[4]

### D.     Petitioner's section 2241 petition.

Petitioner filed the instant § 2241 petition on March 25, 2021, asserting four claims:[5]   (1) that his mandatory consecutive sentences, derived under the sentencing guideline for treason, and pursuant to U.S.S.G. § 5G1.2, were improper; (2) that he was improperly denied a minor role adjustment; (3) that seditious conspiracy is vague and not a crime of violence; and (4) that his conditions of confinement due to potential exposure to Covid-19 constitute extraordinary circumstances warranting his release from custody. (ECF No. 1 at 9-10).   Because it is apparent from the face of the petition that the court lacks jurisdiction to consider these claims under § 2241, the undersigned has not required the respondent to respond to the petition.

---

4   It appears that the sentencing court may have previously denied at least one other § 3582(c) motion filed by Petitioner.   *See United States v. Saleh,* No. 93 Cr. 181 (WHP), 2020 WL 3839626 (S.D.N.Y. July 8, 2020).   That decision is presently on appeal to the Second Circuit.   *See Saleh v. United States*, Nos. 20-2254 and 21-341 (2d Cir).

5   Petitioner switches the order in which he addresses his claims in the form petition (ECF No. 1 at 6-7) and the attached pages containing his arguments.   (*id.* at 9-10).   The undersigned will address the claims in the order in which they appear in the argument section on pages 9 and 10.

## ANALYSIS

Petitioner's claims, other than his allegations concerning his conditions of confinement, challenge the validity of his sentences, and not the manner in which his sentences are being executed by the Federal Bureau of Prisons.   Motions under 28 U.S.C. § 2255 are the primary remedy for testing the validity of federal judgments and must be filed in the court of conviction, which, in this case, is the United States District Court for the Southern District of New York.   Normally, a § 2255 motion filed in a court other than the sentencing court should be transferred to the sentencing court.   However, as noted in the procedural history, Petitioner was previously denied § 2255 relief in that court.

28 U.S.C. § 2241 is generally used to address matters concerning the execution of a federal sentence, and is not an additional, alternative, or supplemental remedy to that provided in § 2255, unless Petitioner can show that the remedy under § 2255 is inadequate or ineffective to test the legality of his detention.    *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000) ("[W]hen § 2255 proves 'inadequate or ineffective to test the legality of . . . detention,' a federal prisoner may seek a writ of habeas corpus pursuant to § 2241.").   *In re Jones* relies upon the statutory language presently found in 28 U.S.C. § 2255(e), which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

This section is known as the "savings clause."  The fact that relief under § 2255 is procedurally barred does not render such remedy inadequate or ineffective to test the legality of a petitioner's detention.   *Id*. at 332.

Thus, before considering Petitioner's § 2241 petition on its merits, this court must first determine whether the remedy under § 2255 is inadequate or ineffective to test the legality of his detention in order that he may pursue such relief under § 2241.   The United States Court of Appeals for the Fourth Circuit has established a three-factor analysis for making this determination.   The remedy under § 2255 is inadequate or ineffective when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the petitioner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d at 333-334 (hereinafter "the *Jones* test").   The Fourth Circuit has modified the *Jones* test and extended the savings clause analysis to sentencing challenges that can meet all the following criteria:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018) (hereinafter "the *Wheeler* test"). The undersigned will address each of Petitioner's sentencing challenges under the *Wheeler* test.

As noted above, the savings clause contained in § 2255(e) cannot be used to circumvent the stringent gatekeeping requirements and procedural bars of § 2255. Thus, the fact that Petitioner's prior § 2255 motion and 60(b) motions were denied does not make § 2255 inadequate or ineffective to test the legality of his detention and, standing alone, will not permit this court to review his claims under § 2241.

In interpreting the phrase "this circuit," as used in *Jones* and *Wheeler*, the Fourth Circuit has held that it is the law of the petitioner's circuit of conviction and sentencing, which in this case is the Second Circuit, that controls. *See Hahn v. Moseley*, 931 F.3d 295, 301 (4th Cir. 2019) ("In evaluating substantive claims under the savings clause, we look to the substantive law of the circuit where a defendant was convicted."); *see also Van Hoorelbeke v. United States*, No. CA-0-08-3869-CMC-PJG, 2010 WL 146289, at *4 (D.S.C. Jan, 8, 2010) (citing *Chaney v. O'Brien*, No. 07-0012, 2007 WL 1189641, at *3 (W.D. Va. Apr. 23, 2007) (holding that, in applying the second prong of the *Jones* test, "the substantive law relevant to a § 2241 petition is that of the circuit in which the petitioner was convicted"); *Eames v. Jones*, 793 F. Supp.2d 747, 750 (E.D.N.C. 2011) (finding the law of the circuit of conviction should apply to § 2241 proceedings held in a different circuit); *Gordon v. Conley*, No. 5:99-cv-00204, 2000 WL 34240482 (S.D.W. Va., June 30, 2000) ("'[C]hange in law' is not to be equated with a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated . . . .").

As noted by the *Chaney* court, and affirmed by the Fourth Circuit, "applying the substantive law of the place of confinement . . . would base the choice of law decision on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational

factor of the place of conviction." 2007 WL 1189641 at *3 [other citations omitted]. Using these criteria, the undersigned will proceed to address each of Petitioner's grounds for sentencing relief to determine whether he meets the savings clause with respect to each claim.

1.    Use of the treason guideline and consecutive sentences.

Petitioner's § 2241 petition repeats his challenge to the use of the treason guideline to determine his base offense level in the absence of a specific guideline governing seditious conspiracy, a claim which was addressed and denied in his direct appeal. He also repeats his assertion that it was improper for the New York district court to sentence him to the statutory maximum for each count of conviction and to run those sentences consecutively pursuant to U.S.S.G. § 5G1.2. However, Petitioner does not rely on any intervening change in substantive law that has been made retroactive on collateral review that would call his sentences into doubt.

At best, Petitioner asserts that the district court "believed this was mandatory in the pre-[*United States v. Booker*, 543 U.S. 220 (2005)] era." Nonetheless, *Booker* was not determined by the Supreme Court or the Second Circuit to be substantively retroactive on collateral review. *See, e.g., Guzman v. United States*, 404 F.3d 139, 144 (2d Cir. 2005) ("*Booker* is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* issued.") Accordingly, Petitioner cannot satisfy the *Wheeler* criteria to assert a challenge based upon *Booker* and he has cited to no other authority representing an intervening change in substantive law that has been deemed retroactively applicable to his sentences.

Therefore, this court lacks jurisdiction to review these challenges, which in essence, repeat those made in his direct appeal, under § 2241.

       2.     The minor role adjustment.

In the second ground of his § 2241 petition, Petitioner repeats his challenge to the denial of a minor role adjustment that was rejected on direct appeal and then again unsuccessfully challenged in his second Rule 60(b) motion. As in his second Rule 60(b) motion, Petitioner relies on the United States Sentencing Commission's clarifying Amendment 794, which, as noted above, <u>was not made retroactive</u>. Petitioner's present petition also references *United States v. Alston*, 899 F.3d 135 (2d Cir. 2018).

Citing to Petitioner's direct appeal decision, the Second Circuit panel noted that the Circuit had previously adopted the view that district courts should gauge a defendant's culpability "as compared to the average participant in such a crime." *Id.* at 149 (citing *Rahman, supra,* 189 F.3d 88, 159 (2d Cir. 1999)). The Court then noted that Amendment 794 "clarified the Commission's intention that a defendant be treated as having a 'minor role' in a crime for purposes of section 3B1.2 when he 'is less culpable than most other participants *in the criminal activity*.' [that is, in reference to the co-participants in the case at hand]." *Id.* (quoting U.S. SENTENCING GUIDELINES MANUAL § 3B1.2, Amendment 794 (effective November 1, 2015) (emphasis added)). Significantly, the defendant in *Alston*, who was also denied the minor role reduction, was sentenced in 2016, after the effective amendment of the guideline; thus, there was no issue of retroactivity concerning his sentence. Nothing in the *Alston* decision demonstrates a retroactive change in substantive law since the time of Petitioner's sentencing that would

satisfy the *Wheeler* standard to permit this court to review Petitioner's minor role reduction claim under § 2241.

        3.      Seditious conspiracy is vague and not a crime of violence.

Petitioner's § 2241 petition also asserts, for what appears to be the first time in any of his proceedings, that seditious conspiracy is vague and not a crime of violence. (ECF No. 1 at 6, 9-10). In support of this claim, Petitioner references the Supreme Court's decision in "Davis" (presumed to be *United States v. Davis*, 139 S. Ct. 2319 (2019), in which the Supreme Court invalidated the residual clause contained in 18 U.S.C. § 924(c)(3)(B) as being unconstitutionally vague for the purpose of determining whether an underlying offense is a crime of violence to satisfy that element of a § 924(c) offense. Petitioner also cites to a 2018 district court decision from the Eastern District of Virginia, *United States v. Kahn*, 330 F. Supp.3d 1076 (E.D. Va. 2018). Significantly, in *Kahn*, in addition to being convicted of conspiracy charges in violation of 18 U.S.C. §§ 371 and 2384 (like Petitioner herein), the defendant was also convicted of a violation of 18 U.S.C. § 924(c) for use and possession of firearms in connection with a crime of violence. Thus, the issue of whether his conspiracy offenses were crimes of violence was central to his conviction and sentence on his § 924(c) offense and *Davis* was critical to that analysis.

In the instant case, however, Petitioner was not convicted of a § 924(c) offense. Accordingly, whether seditious conspiracy is a crime of violence had no determinative effect on his sentences. Therefore, *Davis* and *Kahn*, which was not decided in his circuit of conviction, have no bearing on Petitioner's sentences and do not satisfy the *Wheeler* criteria to enable this court to consider this claim under § 2241. Moreover, Petitioner's

claims on this basis appear to be wholly meritless, as these decisions have no application to his convictions and sentences.

                 4.     Petitioner's request for compassionate release and challenge to his conditions of confinement.

Petitioner's remaining claims in his § 2241 petition challenge his conditions of confinement at FCI Beckley and are not subject to the *Wheeler* analysis.   Specifically, Petitioner contends that the Covid-19 pandemic and the Warden's response thereto has created an "unsafe condition of confinement" that poses an excessive risk to his health. Petitioner, who is 66 years old, claims that he suffers from specific medical conditions that compromise his immune system.   Therefore, he contends that his potential exposure to Covid-19 under the current conditions of the prison constitutes an extraordinary and compelling circumstance justifying his release from prison. Petitioner claims that the Warden has denied his release due to an Immigration and Customs Enforcement ("ICE") detainer placed against him.   He further contends that his continued housing under such conditions violates his Fifth and Eighth Amendment rights.   He requests that the court release him and turn him over to ICE to be deported to Jordan.   (ECF No. 1 at 7).

In support of this claim, Petitioner cites to a Southern District of New York opinion granting a temporary restraining order ("TRO") in a matter where ICE detainees (who, unlike Petitioner, did not appear to otherwise be serving valid federal sentences) were ordered to be released on their own recognizance and were prohibited from being further held on immigration detention during the pendency of their immigration proceedings. *See Basank v. Decker*, 449 F. Supp. 3d 205, 216 (S.D.N.Y. 2020).

Under 18 U.S.C. § 3582(c)(1)(A), a sentencing court (not the court in the district where a federal criminal defendant is in custody) may, upon motion of the Director of the Bureau of Prisons ("BOP") or upon motion of the defendant, reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction."   This authority is often referred to as "compassionate release."

However, if the BOP does not bring a motion for compassionate release on behalf of a defendant, the defendant may only bring a motion on his or her own behalf after either "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *Martinez-Brooks v. Easter*, 459 F. Supp.3d 411, 428 (D. Conn. 2020). Petitioner presently has a motion for compassionate release pending in his sentencing court.   That motion is the proper vehicle for addressing his request for compassionate release; consequently, his request for such release made in his current petition before this court is not appropriate for consideration.

Courts in this circuit and elsewhere have consistently found that a § 2241 petition is not the appropriate mechanism by which to raise a request for compassionate release, which must instead be brought under 18 U.S.C. § 3582 in the court that issued the inmate's sentence.   *See, e.g., Shephard v. Adams*, 2020 WL 5222384, at *1 (N.D.W. Va. Sept. 1, 2020) (Bailey, J.); *Robinson v. Wilson*, No. 1:17-cv-02630, 2017 WL 5586981, at *5 (S.D.W. Va. Sept. 26, 2017) (Eifert, M.J.), *report and recommendation adopted*, 2017 WL 5586272 (S.D.W. Va. Nov. 20, 2017) (Faber, S.J.) ("Like a § 2255 motion, a § 3582 motion must be filed in the movant's underlying criminal action and be addressed by the

18

sentencing court."); *see also Deffenbaugh v. Sullivan*, No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019) (Flanagan, J.) ("If petitioner now seeks to file his own motion for compassionate release, such a motion must be filed in the sentencing court."); *Allah v. Fed. Bureau of Prisons Dir.*, No. CV 9:16-2665-BHH-BM, 2016 WL 5868093, at *4 (D.S.C. Sept. 12, 2016), *report and recommendation adopted*, 2016 WL 5851936 (D.S.C. Oct. 6, 2016) (Marchant, M.J.) (same) (collecting cases); *Braswell v. Gallegos*, 82 Fed. Appx. 633, 635 & n. 2 (10th Cir. 2003) ("Because a motion filed under § 3582 requests modification of a sentence, it follows that such a motion must be filed in the district court which imposed the sentence.").   Accordingly, the undersigned **FINDS** that Petitioner's request for compassionate release should be dismissed without prejudice.[6]

## FINDINGS AND RECOMMENDATION

In the instant matter, Petitioner is not relying on any retroactive change in substantive law since the time of his conviction and sentencing.   Thus, he cannot satisfy the *Jones* or *Wheeler* criteria.   Accordingly, the undersigned proposes that the presiding

---

6  Alternatively, if Petitioner wishes to pursue claims concerning alleged violations of his Fifth or Eighth Amendment rights stemming from specific conditions of confinement caused by conduct of particular federal officials at FCI Beckley, he must do so in a separate civil rights complaint filed pursuant to the holding in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971), after exhausting the available BOP administrative remedy process.   *See Preiser v. Rodriguez*, 411 U.S. 475, 499-500 (1973).*; Ajaj v. Smith*, 108 F. App'x 743, 744 (4th Cir. 2004) (A § 2241 petition is appropriate where the prisoner challenges the fact or length of confinement, but, generally, not the conditions of that confinement)*; see also Rivernider v. Joyner, No*. 9:17-cv-1894, 2018 WL 4560716, fn. 2 (D.S.C. Jan. 17, 2018) (dismissing claims concerning conditions of confinement to the extent such claims were asserted in a § 2241 action)*; Roudabush v. Warden*, No. 8:18-cv-1818, 2018 WL 3979858, * 1 (D.S.C. July 18, 2018) (finding a § 2241 petition improperly raised claims of harassment, unsanitary food, and lack of mental health care)*; Hargrove v. Masters*, No. 1:15-cv-06930, 2017 WL 712758 * 2 (S.D.W. Va. Feb. 23, 2017) (Faber, J.) (finding that petitioner's challenge to his conditions of confinement was properly construed as a *Bivens* action "because 'challenges to the conditions of [] confinement are not cognizable under § 2241, but instead must be pursued through a *Bivens* action ...' ")*; Crooker v. Stewart*, No. ELH-14-1972, 2015 WL 1210209, * 3 (D. Md. March 13, 2015) (finding that alleged violations of the Eighth Amendment should be addressed by a *Bivens* or § 1983 action, not in a § 2241 petition).

District Judge **FIND** that Petitioner has not demonstrated that § 2255 is inadequate or ineffective to test the legality of his detention and, thus, his sentencing challenges in his present petition are not proper for consideration under 28 U.S.C. § 2241.   Inasmuch as those claims are not properly brought under § 2241, his petition "must either be dismissed or construed as a section 2255 motion." *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000). Because Petitioner has previously been denied § 2255 relief in his court of conviction, it would be futile to transfer consideration of those claims to that court because the petition would likely be an unauthorized second or successive § 2255 motion.

Moreover, Petitioner's claim for compassionate release contained in the present petition is more appropriately addressed in the motion pending in his sentencing court under 18 U.S.C. § 3582(c).    Therefore, the undersigned further proposes that the presiding District Judge **FIND** that this court lacks jurisdiction to consider any of Petitioner's claims under § 2241.   Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** Petitioner's § 2241 petition (ECF No. 1) and this civil action for lack of jurisdiction.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, Petitioner shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific

written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.   *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).   A copy of such objections shall be served on Judge Volk.

The Clerk is directed to file this Proposed Findings and Recommendation and mail a copy of the same to Petitioner.

February 18, 2022

Dwane L. Tinsley
United States Magistrate Judge

21