UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MOHAMMED A. SALEH,

        Petitioner,

v.                                      CIVIL ACTION NO. 5:21-cv-00185

KATINA HECKARD,

        Respondent.

## MEMORANDUM OPINION AND ORDER

Pending is Petitioner Mohammed A. Saleh's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Doc. 1].

## I.

On January 17, 1996, following a nine-month jury trial in the United States District Court for the Southern District of New York, Mr. Saleh was convicted on one count each of seditious conspiracy, in violation of 18 U.S.C. § 2384 (Count One), bombing conspiracy, in violation of 18 U.S.C. § 371 (Count Five), and attempted bombing, in violation of 18 U.S.C. § 844(i) (Count Six). [Doc. 8 at 1–2 (citing *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999))].

At sentencing, the district court applied the November 1, 1992, edition of the then-mandatory United States Sentencing Guidelines ("U.S.S.G.") in effect at the time of the crime inasmuch as it was "more advantageous to the defendants than the version in effect at the time of sentencing." *Rahman*, 189 F.3d at 145. Since the Guidelines did not specify a base offense level for the seditious conspiracy offense, the district court relied on U.S.S.G. § 2X5.1, which provided "that if the offense is a felony for which no guideline has been issued, the sentencing judge is to

apply 'the most analogous offense guideline,' so long as one is 'sufficiently analogous.'" *Id.* at 146. The district court therefore applied the treason guideline -- U.S.S.G. § 2M1 -- as the "most appropriate analogy" based on the jury's finding that "one of the goals of the seditious conspiracy had been 'to wage a war of urban terrorism against the United States.'" *Id.* After applying a downward variance for uncompleted conspiracy and an upward enhancement for obstruction of justice, the court utilized the Guidelines' "grouping" rules to determine an appropriate "combined offense level" of 42. *Id.* at 146–47 (citing 18 U.S.S.G. § 3D1.4). It next considered any potential limitations that the statutory maximums for the counts of Mr. Saleh's conviction would impose on the court's authority to stack sentences to reach the total punishment called for by the Guidelines. *Id.* at 147. Ultimately, Mr. Saleh was sentenced to 35 years of incarceration, the statutory maximum. *Id.* at 149.

Mr. Saleh appealed his conviction to the United States Court of Appeals for the Second Circuit, challenging the district court's use of the treason guideline, imposition of consecutive sentencing, and failure to grant a two-level minor role reduction under U.S.S.G. § 3B1.2(b) as erroneous. *Id.* at 150–60. After careful consideration of each claim raised on appeal, the Second Circuit concluded that they were "without merit" and affirmed Mr. Saleh's conviction. *Id.* On January 9, 2001, Mr. Saleh filed a motion in his sentencing court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *Elgabrowny v. United States*, Nos. 1:93-cr-181/1:01-cv-169, 2003 WL 22416167 (S.D.N.Y. Oct. 22, 2003). The district court denied and dismissed the motion after determining that the case upon which Mr. Saleh relied -- *Apprendi v. New Jersey* -- could not be applied retroactively and was therefore inapplicable. *Elgabrowny*, 2003 WL 22416167, at *1 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). Every subsequent attempt by Mr. Saleh to obtain relief from the sentencing court likewise failed. [Doc. 8 at 8–10].

Mr. Saleh filed the instant § 2241 petition on March 25, 2021. [Doc. 1]. He requests relief on four grounds: (1) that the sentencing court's use of the treason guideline to determine his base level offense and the application of consecutive statutory maximum sentences pursuant to U.S.S.G. § 5G1.2 were improper; (2) that he was improperly denied a minor role sentence reduction; (3) that seditious conspiracy is a vague, nonviolent crime; and (4) that his conditions of confinement constitute extraordinary circumstances warranting compassionate release due to the COVID-19 pandemic. [*Id.*].

This action was previously referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge, for submission of proposed findings and a recommendation ("PF&R"). Magistrate Judge Tinsley filed his PF&R on February 18, 2022. [Doc. 8]. Magistrate Judge Tinsley characterizes most of Mr. Saleh's claims as challenges to the legality of his detention rather than the conditions of confinement and states that Mr. Saleh has failed to demonstrate that § 2255 would be inadequate or ineffective to test that legality. [*Id.* at 11]. He concludes that the Petition must, therefore, "either be dismissed or construed as a section 2255 motion." [*Id.* at 19–20 (quoting *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000))]. Based on the Second Circuit's multiple denials of § 2255 relief in Mr. Saleh's prior appeals, Magistrate Judge Tinsley further concludes that "it would be futile to transfer consideration of [Mr. Saleh's § 2255] claims to [the sentencing] court because the petition would likely be an unauthorized second or successive § 2255 motion." [*Id.* at 20].

Additionally, Magistrate Judge Tinsley indicates that Mr. Saleh's request for compassionate release would be "more appropriately addressed in the motion [then] pending in

his sentencing court under 18 U.S.C. § 3582(c)"[1] than in the § 2241 motion pending in this Court.
[*Id.*]. He states that "[c]ourts in this circuit and elsewhere have consistently found that a § 2241
petition is not the appropriate mechanism by which to raise a request for compassionate release,
which must instead be brought under 18 U.S.C. § 3582 in the court that issued the inmate's
sentence." [*Id.* at 18]. Because the sentencing court is elsewhere and a § 3582 motion was there
pending at the time the Petition was filed, Magistrate Judge Tinsley recommends that Mr. Saleh's
request for compassionate release be dismissed without prejudice.

        For the foregoing reasons, Magistrate Judge Tinsley proposes that the Court find
(1) that Mr. Saleh has not "demonstrated that § 2255 is inadequate or ineffective to test the legality
of his detention, and thus, his sentencing challenges . . . are not proper for consideration under 28
U.S.C. § 2241"; and (2) that the Court lacks jurisdiction to consider any of Mr. Saleh's claims
under § 2241. [*Id.* at 19–20]. He recommends dismissal. [*Id.*].

        On March 7, 2022, Mr. Saleh filed objections to the PF&R, in which he contends
that this Court has jurisdiction and provides additional supporting rationales for his sentencing
challenges. [Doc. 10]. On April 7, 2022, Mr. Saleh filed a Motion to Set Aside and Vacate, arguing
that he never consented to the submission of the PF&R from Magistrate Judge Tinsley and that the
PF&R should therefore be vacated under Fed. R. Civ. P. "60(b)(4)(6)" (sic). [Doc. 11].

---

      [1]      This motion was denied by the sentencing court on July 8, 2020. *See United States
v. Saleh*, No. 93-cr-181, 2020 WL 3839626 (S.D.N.Y. July 8, 2020). In its opinion, that court held
that despite Mr. Saleh's arguments regarding the COVID-19 pandemic, his health concerns,
changes in the sentencing law, and his "extensive rehabilitation," he had failed to plead sufficient
"extraordinary and compelling reasons" to warrant either a reduction in his sentence or his release
from confinement under 18 U.S.C. § 3582(c)(1). *Id.* at *4–11. Mr. Saleh appealed this decision,
and on May 27, 2022, the Second Circuit affirmed the lower court's denial of Mr. Saleh's motion
for sentence reduction. *United States v. Elgabrowny*, No. 20-2254, 2022 WL 1701515 (2d Cir.
2022) (unpublished).

## II.

Whether an inmate may challenge his sentence under § 2241 is a question of law that the Court reviews de novo. *Lester v. Flournoy*, 99 F.3d 708, 710 (4th Cir. 2018). The Court is also required "to make a de novo determination of those portions of the [PF&R] or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court need not review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations *to which objection is made*." (emphasis added)). Failure to file timely objection constitutes a waiver of de novo review and the Petitioner's right to appeal the Court's order. *See* 28 U.S.C. § 636(b)(1); *see also United States v. De Leon-Ramirez*, 925 F.3d 177, 181 (4th Cir. 2019) (parties may not typically "appeal a magistrate judge's findings that were not objected to below, as § 636(b) doesn't require de novo review absent objection."); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989).

## III.

Mr. Saleh filed a total of eight objections to Magistrate Judge Tinsley's PF&R as outlined below. Objections 1 through 7 challenge the legality of Mr. Saleh's sentencing. Objection Eight relates to his conditions of confinement.

### A.     *Objection One*

Mr. Saleh objects to Magistrate Judge Tinsley taking judicial notice of the procedural history and facts from the opinions of the sentencing court and Second Circuit. [Doc.

10 ¶ 1]. Specifically, he claims that Magistrate Judge Tinsley ignored statements in the record from the co-conspirators that would call into question Mr. Saleh's knowledge of the underlying conspiracy. [*Id.*].

**B.      Objection Two**

Mr. Saleh further objects to Magistrate Judge Tinsley's conclusion that this Court lacks jurisdiction to consider Mr. Saleh's claims under § 2241. [Doc. 10 ¶ 2]. He contends that he "should be heard on the merits where his misclassification for first time offender put him in status as career offender." [*Id.*]. He also asserts, without further explanation, that "this Court does have jurisdiction to [consider] [his] claims under § 2241." [*Id.*].

**C.      Objection Three**

Mr. Saleh further objects to the sentencing court's use of U.S.S.G. § 5G1.2(d) "to justify the mandatory application of [an erroneous] sentence." [Doc. 10 ¶ 3]. He cites the Fourth Circuit's unpublished opinion in *United States v. Hammoud*, 483 F. App'x 865 (4th Cir. 2012), upholding a post-*Booker* sentence reduction, to seemingly argue that his sentence was erroneous. [*Id.* (citing *United States v. Booker*, 543 U.S. 220 (2005))].

**D.      Objection Four**

Mr. Saleh further objects to Magistrate Judge Tinsley's contention that a proceeding under 28 U.S.C. § 2255 is the proper vehicle for Mr. Saleh's sentencing challenges. [Doc. 10 ¶ 4]. Mr. Saleh argues that § 2255 is "inadequate and ineffective" to test the legality of his detention, and therefore, his § 2241 petition is proper. [*Id.* (citing *Lester v. Flournoy*, 909 F.3d 708 (4th Cir. 2018))].

**E.      Objection Five**

Mr. Saleh further objects to the sentencing court's application of the "uncharged

treason Guidelines" and U.S.S.G. § 5G1.2(d), arguing that the District Court was "wrong" in applying these Guidelines. [Doc. 10 ¶ 5]. He first quotes the Fourth Circuit's description of incorrect sentencing benchmarks in *Lester* as "fundamentally problematic." [*Id.* (citing *Lester*, 909 F.3d at 713) (mistakenly cited as *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018))]. Mr. Saleh then cites *Wheeler* to argue that the sentencing court's application of these Guidelines constituted a fundamental defect that disregarded his right to liberty and was "a denial of due process of law." [*Id.* (citing *Wheeler*, 886 F.3d at 432, 433)]. He further argues that the savings clause allows inmates "sentenced within erroneous Guidelines ranges pre-*Booker* to challenge their sentences under § 2241." [*Id.*].

## F.    Objection Six

Mr. Saleh further objects to the "vagueness [of] the sedition conspiracy [charge]," and argues that he raised the issue on appeal but was "wrongly" denied relief. [Doc. 10 ¶ 6]. He cites the rule outlined in *Manning v. Caldwell* -- "[t]o survive a vagueness challenge, a statute must give a person of ordinary intelligence adequate notice of what conduct is prohibited and must include sufficient standards to prevent arbitrary and discriminatory enforcement." 930 F.3d 264, 272 (4th Cir. 2019).

## G.    Objection Seven

Mr. Saleh further objects to the sentencing court's refusal to apply the minor role adjustment, stating that the "same argument should be said" regarding this objection as in Objection 6. [Doc. 10 ¶ 7]. In full, this objection states as follows: "Same argument should be said about denying the minor role adjustment in which the sentencing commission in Amend. 794 use petitioner to show the rejection for the 2nd Circuit approach of this issue which was explain (sic) in detail in petitioner brief." [*Id.*].

**H.      Objection Eight**

Finally, Mr. Saleh objects to the conditions of his confinement, arguing that § 3583(e)(2) allows district courts to "eliminate illegal condition[s] at any time." [Doc. 10 ¶ 8].

# IV.

"Federal prisoners generally must use the remedy-by-motion mechanism provided in 28 U.S.C. § 2255 to challenge their convictions or sentences." *Marlowe v. Warden, Fed. Corr. Inst. Hazelton*, 6 F.4th 562, 568 (4th Cir. 2021) (citing *Farkas v. Warden, FCI Butner II*, 972 F.3d 548, 554 (4th Cir. 2020); *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997)). Motions under § 2255 must typically be heard by the federal inmate's sentencing court, which in this case is the United States District Court for the Southern District of New York. However, "because § 2255 was 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus,' rather than to limit their rights to collaterally attack their convictions and sentences, Congress included a so-called 'savings clause' in § 2255." *Jones v. Zych*, 812 F. App'x 115, 116 (4th Cir. 2020) (unpublished) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974)). This clause provides that

> [a]n application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

While § 2241 provides a general grant of habeas corpus authority, the remedy under § 2241 is not an additional, alternative, or supplemental remedy to that prescribed by § 2255. Rather, a federal inmate may only petition for habeas relief under § 2241 if he can establish that § 2255 is "inadequate or ineffective to test the legality of his detention." *Rice v. Rivera*, 617 F.3d

802, 807 (4th Cir. 2010) (citation omitted); *see also In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000)

(holding that "when § 2255 proves 'inadequate or ineffective to test the legality of . . . detention,'

a federal prisoner may seek a writ of habeas corpus pursuant to § 2241"). The Fourth Circuit has

held, however, that "'§ 2255 is not rendered inadequate or ineffective merely because an individual

has been unable to obtain relief under that provision' . . . [i]n other words, a test is not 'inadequate'

just because someone fails it." *Farkas*, 972 F.3d at 555–56 (quoting *In re Vial*, 115 F.3d at 1194

n.5); *Lester*, 909 F.3d at 716. The Fourth Circuit has also "repeatedly acknowledged" that the

"savings clause" "must be interpreted 'narrowly.'" *Slusser v. Vereen*, 36 F.4th 590, 594 (4th Cir.

2022); *Farkas*, 972 F.3d at 556 (stating that the "saving clause" should only be applied in "limited

circumstances" to "'provide[ ] only the tightest alleyway' to relief").

      Our Court of Appeals established a three-factor analysis -- known as "the *Jones*

test" -- to define the "limited circumstances" under which § 2255 will be deemed inadequate or

ineffective in challenges to criminal convictions. *In re Jones*, 226 F.3d at 333–34. This test

provides that a remedy under § 2255 is inadequate or ineffective when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court
> established the legality of the conviction; (2) subsequent to the prisoner's direct
> appeal and first § 2255 motion, the substantive law changed such that the conduct
> of which the petitioner was convicted is deemed not to be criminal; and (3) the
> prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule
> is not one of constitutional law.

*Id.*

      The *Jones* test was modified in *United States v. Wheeler*, whereby the Fourth

Circuit extended the test to sentencing challenges that meet all the following criteria:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court
> established the legality of the sentencing; (2) subsequent to the prisoner's direct
> appeal and first § 2255 motion, the aforementioned settled substantive law changed
> and was deemed to apply retroactively on collateral review; (3) the prisoner is
> unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive

motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018).

The petitioner in a sentencing challenge bears the burden of establishing that a § 2255 motion is inadequate or ineffective by satisfying the *Wheeler* criteria and thus, the savings clause requirements. *See Hood v. United States*, 13 F. App'x 72, 72 (4th Cir. 2001); *Hayes v. Ziegler*, No. 5:11-cv-00261, 2014 WL 670850 (S.D. W. Va. Feb. 20, 2014), *aff'd*, 573 F. App'x 268 (4th Cir. 2014). Satisfaction of the savings clause requirements is jurisdictional. If the savings clause does not apply, the Court is not authorized to adjudicate the petitioner's claim. *Wheeler*, 886 F.3d at 425.

In analyzing the first prong of the *Wheeler* test, the Court must look to the substantive law of the circuit where Mr. Saleh was sentenced. *Hahn v. Moseley*, 931 F.3d 295, 301 (4th Cir. 2019) ("In evaluating substantive claims under the savings clause, we look to the substantive law of the circuit where a defendant was convicted."); *Marlow v. Warden, Fed. Corr. Inst. Hazelton*, 6 F.4th 562, 572 (4th Cir. 2021); *see also Chaney v. O'Brien*, No. 07-112, 2007 WL 118641, at *3 (W.D. Va. Apr. 23, 2007) (noting that "applying the substantive law of the place of confinement . . . would base the choice of law decision on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the place of conviction"). Mr. Saleh was sentenced in the United States District Court for the Southern District of New York, a court within the Second Circuit's jurisdiction. The Court, therefore, must apply the substantive law from that Circuit in its analysis of the remaining *Wheeler* factors for each of Mr. Saleh's claims.

## A.    *Objections Three, Four, and Five*

The Court first turns to Mr. Saleh's claim that it was improper for the sentencing court to use the treason guideline to determine his base offense level in the absence of a specific

guideline governing seditious conspiracy and to impose consecutive maximum sentences pursuant to U.S.S.G. § 5G1.2. These challenges were addressed in Mr. Saleh's direct appeal, where the Second Circuit concluded that the claims were "without merit" and denied relief. *Rahman*, 189 F.3d at 150–60. In this case, Mr. Saleh asserts that the sentencing court believed the application of the treason guideline and consecutive maximum sentences was "mandatory in the pre-*Booker* era" and that the *Booker* decision, applied retroactively, warrants a sentence reduction in his case. [Doc. 1 at 9 (citing *Booker*, 543 U.S. 220)].

Applying the substantive law of the Second Circuit, the Court must determine whether "subsequent to the prisoner's direct appeal and first § 2255 motion, the . . . settled substantive law [of the Second Circuit or the Supreme Court] changed and was deemed to apply retroactively on collateral review." 28 U.S.C. § 2255(e). Since 2005, the Second Circuit has consistently held that *Booker* is not substantively retroactive. *See, e.g.*, *Guzman v. United States*, 404 F.3d 139, 140 (2d Cir. 2005) (holding that "*Booker* is not retroactive: it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* issued"); *Cortorreal v. United States*, 486 F.3d 742, 744 (2d Cir. 2007) (holding that "*Booker* does not apply retroactively to cases . . . on collateral review"); *Pena v. United States*, 534 F.3d 92, 96 n.3 (2d Cir. 2008) (stating that "*Booker* does not apply retroactively to collateral challenges to judgments that were final on the day that case was decided"); *United States v. Vargas*, 502 F. Supp. 3d 820, 826 (S.D.N.Y. Nov. 24, 2020) ("Unfortunately for [petitioner] and others in his position, the Second Circuit determined that those who had previously received mandatory Guideline sentences could not rely on *Booker* to retroactively challenge their sentences." (citation omitted)).

The Second Circuit is not alone in this regard. Other circuits agree with the Second

Circuit's refusal to apply *Booker* retroactively. *See Lloyd v. United States*, 407 F.3d 608, 615–16 (3d Cir. 2005) (holding that "[b]ecause *Booker* announced a rule that is 'new' and 'procedural,' but not 'watershed,' *Booker* does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date *Booker* issued"); *In re Elwood*, 408 F.3d 211, 213 (5th Cir. 2005) (holding that "*Booker* does not apply retroactively on collateral review for purposes of a successive § 2255 motion"); *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021) (holding that the district court "abused its discretion when it relied on the non-retroactive decision in *Booker*" in its analysis); *McReynolds v. United States*, 397 F.3d 479, 480 (7th Cir. 2005) (concluding that *Booker* does not apply retroactively to cases on collateral review); *Never Misses a Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005) (concluding that "the 'new rule' announced in *Booker* does not apply to criminal convictions that became final before the rule was announced, and thus, does not benefit movants in collateral proceedings"); *Bey v. United States*, 399 F.3d 1266, 1269 (10th Cir. 2005) (holding that "*Booker* may not be applied retroactively to second or successive habeas petitions"); *United States v. Hicks*, 911 F.3d 623, 628 (D.C. Cir. 2018) (stating that "the *Booker* decision does not apply retroactively").

*Booker* has not been determined by either the Supreme Court or the Second Circuit to be substantively retroactive on collateral review. Because Mr. Saleh has pointed to no other binding precedent that represents an intervening change sufficient to satisfy *Wheeler*'s second prong, this claim cannot be brought under § 2241. Accordingly, the Court **OVERRULES** Objections 3 through 5.

## B. *Objection Six*

Next, the Court turns to Mr. Saleh's claim that seditious conspiracy is a vague, non-violent crime, and his apparent argument that as such, any conviction or sentence stemming from

that charge should be void. [Doc. 10 ¶ 6]. He bases this argument on the Supreme Court's statement in *United States v. Davis* that "a vague law is no law at all." 139 S. Ct. 2319, 2323 (2019). He also argues that the statute for seditious conspiracy does not "give a person of ordinary intelligence adequate notice of what conduct is prohibited," as is required in the Fourth Circuit. *Manning v. Caldwell*, 930 F.3d 264, 272 (4th Cir. 2019). Finally, he cites a district court case in which he contends the Eastern District of Virginia released an inmate after finding that seditious conspiracy is not a crime of violence. *See United States v. Khan*, 330 F. Supp. 3d 1076 (E.D. Va. Aug. 1, 2018).

Applying the substantive law of the Second Circuit, the Court must determine whether "subsequent to the prisoner's direct appeal and first § 2255 motion, the . . . settled substantive law [of the Second Circuit] changed [on this subject] and was deemed to apply retroactively on collateral review." 28 U.S.C. § 2255(e). The statute for seditious conspiracy states, in pertinent part, as follows:

> If two or more persons in any State or Territory . . . conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, or to oppose by force the authority thereof . . . they shall each be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2384. Although Mr. Saleh did cite to a Supreme Court case on the issue of vagueness, that case did not deal with this specific statute. As such, it has no bearing on this case. Further, there have been no Second Circuit cases that deal with this particular statute beyond Mr. Saleh's direct appeal in *Rahman*.

Because Mr. Saleh has failed to point to any controlling precedent subsequent to his direct appeal and first § 2255 motion that changed the law within the Second Circuit on this particular issue, he has not satisfied the second prong to the *Wheeler* test for this claim. Thus, this claim cannot be brought under the pending § 2241 motion in this Court. Accordingly, the Court

13

**OVERRULES** Objection Six.

C.     *Objection Seven*

The Court next turns to Mr. Saleh's argument that the sentencing court's denial of a minor role adjustment was improper under the Sentencing Guidelines. This challenge was also brought on appeal by Mr. Saleh to the Second Circuit and was denied as "without merit." *Rahman*, 189 F.3d at 159–60. Mr. Saleh then filed a second Rule 60(b) motion, which was also unsuccessful. [Doc. 8 at 15]. He now petitions the Court under § 2241, relying on the United States Sentencing Commission's clarifying Amendment 794 and a Second Circuit case in which that amendment was applied to grant a minor role adjustment to a criminal defendant -- *United States v. Alston*, 899 F.3d 135 (2d Cir. 2018) -- to argue that he should, likewise, be granted the adjustment.

In Mr. Saleh's direct appeal to the Second Circuit on this issue, the court explained the then-applicable minor role reduction guideline as follows:

> The Guidelines provide for a four-level reduction in offense level for a defendant who plays a "minimal role in concerted activity," or a two-level reduction for a "minor participant in criminal activity." A reduction will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be "minor" or "minimal" as compared to the average participant in such a crime. *See United States v. Amjal*, 67 F.3d 12, 18 (2d. Cir. 1995).

*Rahman*, 189 F.3d at 159 (citations omitted).

Amendment 794 (the "Amendment") to the Sentencing Guidelines became effective on November 1, 2015, and "clarified that a role reduction [under U.S.S.G. § 3B1.2] is appropriate if the defendant was 'substantially less culpable than the average participant in the criminal activity,' and that the 'average participant' specifically refers to the defendant's 'co-participants in the case at hand.'" *United States v. Tang Yuk*, 885 F.3d 57, 95 n.16 (2d Cir. 2018). Mr. Saleh cites a Second Circuit case, *United States v. Alston*, in which the court accorded

14

the Amendment "controlling weight," to argue that it should apply to his sentence. In that case, the Second Circuit adopted the Amendment's interpretation of "average participant" so that "in the version of section 3B1.2 in effect after the adoption of Amendment 794 . . . the applicability of a 'minor role' reduction depends on the nature of the defendant's role *in comparison to that of his co-participants in his criminal activity.*" *United States v. Alston*, 899 F.3d 135, 150 (2d Cir. 2018) (emphasis added). Although these cases apply the Amendment's interpretation of "average participant" to cases decided after 2015, neither addresses whether the Amendment can apply *retroactively* to sentencings that occurred prior to its enactment, an issue that Mr. Saleh has not addressed.

U.S.S.G. § 1B1.10 -- the guideline governing post-sentencing reductions based upon retroactive Guideline amendments -- provides as follows:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in [§ 1B1.10(d)], the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).

U.S.S.G. § 1B1.10(a)(1). Section 1B1.10(d), as referenced, lists several amendments that are retroactive under the policy, but it does not include Amendment 794. Therefore, the Court must, again, turn to the substantive law of the Second Circuit on this issue.

Since Amendment 794's passage, the Second Circuit has repeatedly held that the Amendment does not apply retroactively for the purposes of sentencing challenges, a fact that the sentencing court pointed out in its 2021 decision to deny Mr. Saleh's then-pending Rule 60(b) Motion. *See United States v. Saleh*, No. 93-cr-00181, 2021 WL 149082, at *7–8 (S.D.N.Y. July 15, 2021) (holding that "Amendment 794 is not retroactive") (citing *Tang Yuk*, 885 F.3d at 95 n.16 (stating that "Amendment 794 . . . has not been given retroactive application, U.S.S.G. § 1B1.10(d)")); *see also United States v. King,* 813 F. App'x 690, 693 (2d Cir. 2020) (unpublished)

("[T]o be eligible for [the modification of a term of imprisonment under § 3582(c)(2)], the amendment upon which [an inmate] relies must be listed as retroactive in § 1B1.10(d). Amendment 794 is not. Thus, it cannot provide a basis for § 3582(c)(2) relief."). Because Mr. Saleh has pointed to no other binding precedent that represents an intervening change sufficient to satisfy *Wheeler*'s second prong, this claim cannot be brought under § 2241. Accordingly, the Court **OVERRULES** Objection Seven.

### D.    *Objection Two*

As discussed above, satisfaction of the savings clause and *Wheeler* requirements are jurisdictional. *Wheeler*, 886 F.3d at 423. Therefore, Mr. Saleh's failure to meet the second prong of *Wheeler* for his sentencing challenges is dispositive in this case. *Ham v. Breckon*, 994 F.3d 682 (affirming the district court's dismissal of petitioner's § 2241 habeas petition for lack of jurisdiction based on a failure to satisfy prong two of the *Wheeler* test). The proper vehicle for relief for Mr. Saleh's challenges to the legality of his sentences is a motion under 28 U.S.C. § 2255. This statute provides that an inmate "may move *the court which imposed the sentence* to vacate, set aside, or correct the sentence[s]." 28 U.S.C. § 2255(a) (emphasis added). Because this Court is not the sentencing court in Mr. Saleh's underlying criminal case, Mr. Saleh's sentencing challenges are not proper for consideration under the pending § 2241 petition for lack of jurisdiction.[2]

Notwithstanding Mr. Saleh's failure to satisfy the *Wheeler* criteria for each of the above-referenced claims, § 1B1.10(b)(2)(C) precludes the Court from reducing Mr. Saleh's sentence because it would result in a reduced term of imprisonment that is less than the term of

---

[2]     Because the Court has determined that there is a lack of jurisdiction over the sentencing challenges, Mr. Saleh's jurisdictional objection (Objection 2) is **OVERRULED**.

imprisonment Mr. Saleh has already served. Section 1B1.10(b)(2)(C) provides that "[i]n no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C). Mr. Saleh's projected release date from imprisonment is September 3, 2023, according to the Federal Bureau of Prisons, meaning he has currently served well over the maximum guideline range that would be applicable if such a reduction were granted. The Court, therefore, **OVERRULES** Objection Two.

E.      *Objection One*

The Court next turns to Mr. Saleh's objection to Magistrate Judge Tinsley taking judicial notice of certain facts and the procedural history from Mr. Saleh's prior cases in the Second Circuit. [Doc. 8 at 2 n.2 ("Much of the procedural history herein is derived from [the] opinion of . . . the Second Circuit . . . affirming the judgment of the district court on direct appeal, as well as subsequent opinions of the sentencing court and the Second Circuit concerning Petitioner's post-conviction filings.")]. Mr. Saleh argues that other facts and statements in the record were improperly ignored by Magistrate Judge Tinsley. [Doc. 10 ¶ 1].

Fed. R. Evid. 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004) (stating that "[o]nly indisputable facts are susceptible to judicial notice"). The Fourth Circuit has held that "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508–09 (4th Cir. 2015). However, "'[f]acts adjudicated in a prior case,' or . . . a prior trial in the same case, 'do not

meet either test of indisputability contained in Rule 201(b).'" *United States v. Awni Shauaib Zayyad*, 741 F.3d 452, 464 (4th Cir. 2021) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). Ultimately, "whether information is the proper subject of judicial notice depends on the use to which it is put." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013) (citing *United States v. Bello*, 194 F.3d 18, 22 (1st Cir. 1999)).

The magistrate judge took judicial notice of these facts purely to give a factual and procedural overview of Mr. Saleh's case in the Second Circuit. *See Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir. 1992) (holding that "[a] court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings'"). Mr. Saleh does not dispute the accuracy of what the magistrate judge cited, but rather argues that, by doing so, the magistrate judge ignored other relevant facts alleged by Mr. Saleh. However, those additional facts -- when taken as true -- have no bearing on the outcome of the case. Accordingly, the Court **OVERRULES** Objection One.

## F.    *Objection Eight*

Mr. Saleh's final objection is to the conditions of his confinement. In his Petition, Mr. Saleh argues that the COVID-19 pandemic and his poor health qualify him for compassionate release. Before analyzing the merits of his claim, the Court must determine whether a petition under § 2241 is the proper mechanism by which Mr. Saleh should seek such relief.

The Court agrees with Magistrate Judge Tinsley that precedent clearly establishes that the more appropriate vehicle for relief was Mr. Saleh's then-pending § 3582 motion in his sentencing court. *See Shephard v. Adams*, No. 5:20-CV-183, 2020 WL 5222384, at *1 (N.D. W.

Va. Sept. 1, 2020); *Robinson v. Wilson*, No. 1:17-cv-02630, 2017 WL 5586981, at *5 (S.D. W. Va. Sept. 26, 2017), *report and recommendation adopted*, 2017 WL 5586272 (S.D. W. Va. Nov. 20, 2017) ("Like a § 2255 motion, a § 3582 motion must be filed in the movant's underlying criminal action and be addressed by the sentencing court."); *see also Braswell v. Gallegos*, 82 F. App'x 633, 635 & n.2 (10th Cir. 2003) ("Because a motion filed under § 3582 requests modification of a sentence, it follows that such a motion must be filed in the district court which imposed the sentence."); *Deffenbaugh v. Sullivan*, No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019) ("If petitioner now seeks to file his own motion for compassionate release, such a motion must be filed in the sentencing court."); *Allah v. Fed. Bureau of Prisons Dir.*, No. CV 9:16-2665-BHH-BM, 2016 WL 5868093, at *4 (D.S.C. Sept. 12, 2016), *report and recommendation adopted*, 2016 WL 5851936 (D.S.C. Oct. 6, 2016) (same) (collecting cases). However, the Court is cognizant of the sentencing court's denial of Mr. Saleh's motion on this matter, and as such, will examine the merits of Mr. Saleh's request despite its agreement with Magistrate Judge Tinsley's recommendation. *See United States v. Saleh*, No. 93-cr-181, 2020 WL 3839626 (S.D.N.Y. July 8, 2020) (*aff'd*).

The First Step Act (the "Act") amended 18 U.S.C. § 3582(c)(1)(A) in order to expand access to compassionate release to incarcerated individuals. Prior to enactment, a court could only consider compassionate release on motion by the Bureau of Prisons ("BOP"). The Act "removed the BOP from that gatekeeping role, authorizing defendants themselves to file motions for sentence reductions." *United States v. McCoy*, 981 F.3d 271, 271 (4th Cir. 2020). Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), the defendant must first exhaust the administrative process established by the BOP or allow "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To grant an inmate's motion for compassionate release or sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the court must (1) find that extraordinary and compelling reasons warrant a sentence reduction, and (2) consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* § 3582(c)(1)(A). When analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion in conducting [its] analysis." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). Our Court of Appeals permits district courts to take a more individualized approach regarding whether "extraordinary and compelling" reasons are established. *McCoy*, 981 F.3d at 286. As of the date of this Order, the United States Sentencing Commission has not yet amended U.S.S.G. § 1B1.13 to address motions filed by defendants. *See United States v. Vaughn*, No. 5:08-00266, 2021 WL 136172, at *2 (S.D. W. Va. Jan. 13, 2021) (quoting *McCoy*, 981 F.3d at 282–83).

In determining whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, district courts have considered the age of the inmate, the documented history and severity of the inmate's health conditions, and the proliferation and status of infections in the prison facility. *United States v. Brady*, No. S2 18 Cr. 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases). Courts give particular attention to the presence of comorbidities that the Centers for Disease Control and Prevention identifies as increasing the risk of serious illness from COVID-19. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (finding an "extraordinary and compelling reason" for compassionate release based on the inmate's diabetes, high blood pressure, and liver abnormalities, as well as the outbreak at FCI Elkton and the short period remaining on his sentence); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release due to defendant's diabetes and age in light of the COVID-19 outbreak); *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D.

Case 5:21-cv-00185   Document 14   Filed 12/20/22   Page 21 of 24 PageID #: 83

Conn. Apr. 2, 2020) (granting compassionate release based on defendant's diabetes, paired with the COVID-19 outbreak).[3]

If an inmate demonstrates extraordinary and compelling reasons for release, the court must then consider the § 3553(a) sentencing factors in deciding whether to exercise its discretion to reduce the inmate's sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021). These factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with . . . training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a); *see High*, 997 F.3d at 187.

Upon careful review under 18 U.S.C. § 3582(c)(1)(A), and the factors set forth in 18 U.S.C. § 3553(a), this Court concludes Mr. Saleh has not shown that either compassionate release or a sentence reduction is warranted.

Mr. Saleh's primary assertion concerns his potential risk of contracting COVID-19 at FCI Beckley. Mr. Saleh contends his age and personal health history puts him at risk of serious complications from COVID-19. Mr. Saleh states that he was, at the time of his Petition, "almost 66 years old" and suffered from pre-diabetes, obesity, high cholesterol, and "other medical conditions." [Doc. 1 at 11]. Some of these conditions put him at a higher risk of serious illness if he contracts COVID-19. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention,       https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

---

[3]      Each of the cited cases was decided early in COVID-19's spread throughout the United States and before vaccinations were available to inmates. *See Rodriguez*, 451 F. Supp. 3d at 393 (considering the lack of an "approved cure, treatment, or vaccine to prevent [COVID-19]" in its analysis); *Zukerman*, 451 F. Supp. 3d at 333 (citing the defendant's "unique circumstances and the exigency of a rapidly advancing pandemic" as factors favoring release).

medical-conditions.html (last updated May 2, 2022).

The conditions at FCI Beckley, however, are not currently dire. While the Facility is currently operating at a Level 2 modification, as of December 18, 2022, there is only one confirmed case of COVID-19 among inmates at FCI Beckley. *Covid-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Dec. 18, 2022). While Mr. Saleh's health conditions are of concern to the Court, given the lack of serious infection at the Facility and the wide availability of vaccinations, the Court finds that Mr. Saleh has not demonstrated that extraordinary and compelling reasons for his release exist on this basis alone.

Further, the applicable 18 U.S.C. § 3553(a) factors caution against Mr. Saleh's release. The subject offenses were undeniably serious. Mr. Saleh was involved in conduct that the Second Circuit has characterized as "tantamount to waging war." *Rahman*, 189 F.3d at 154. Specifically, he "had 'joined a terrorist conspiracy whose objective was the indiscriminate killing of Americans in the name of jihad,' and aided that conspiracy by 'provid[ing] [diesel] fuel to his co-conspirators as part of a terrorism plot to bomb bridges and tunnels in New York City.'" *Elgabrowny*, 2022 WL 1701515, at *2–3.

For the foregoing reasons, the Court **DENIES** Defendant Mohammed Saleh's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and, accordingly, **OVERRULES** Mr. Saleh's final objection.

## V.

On April 7, 2022, Mr. Saleh filed a Motion to Set Aside & Vacate the PF&R. [Doc. 11]. In it, Mr. Saleh objects to the assignment of Magistrate Judge Tinsley in his case, claiming that he previously notified the Court "[o]n or around April 16, 2021" that he "refus[ed] to be heard

by U.S. [Magistrate] Judge." [*Id.* ¶ 1]. There is no evidence on the record of this notification. Mr. Saleh further states that he "never consented to that according [to] 28 U.S.C. [§] 636(c)." [*Id.* ¶ 2]. Finally, Mr. Saleh contends that under *Federal Rule of Civil Procedure* 60(b)(4)-(6), the PF&R should be void and "the case should be heard by District Judge." [*Id.* ¶ 3].

28 U.S.C. § 636(c) -- the statute upon which Mr. Saleh relies in arguing that he did not consent to Magistrate Judge Tinsley's preparation of a PF&R in this case -- provides, in pertinent part, that "[u]pon the consent of the parties, a full-time United States [magistrate judge] . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court . . . he serves." 28 U.S.C. § 636(c)(1). This case, however, does not fall within these parameters. Magistrate Judge Tinsley was not designated to order the entry of judgment in this case. Rather, he was designated to "submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . of [Mr. Saleh's] applications for [post-trial] relief . . . and [Mr. Saleh's] petition[] challenging conditions of confinement." *Id.* § 636(b)(1)(B). This designation was made pursuant to a Standing Order applicable to all cases filed on or after January 1, 2016. [Doc. 2]. Mr. Saleh's consent to this designation is not required.

With respect to Mr. Saleh's contention that the PF&R is void under *Federal Rule of Civil Procedure* 60 -- that Rule reads, in pertinent part, as follows:

> On motion and just terms, the court may relieve a party or its legal representative from *a final judgment, order, or proceeding* for the following reasons: . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(a)(4)-(6) (emphasis added). The PF&R submitted by Magistrate Judge Tinsley is "neither a final order nor an appealable interlocutory or collateral order" to which this Rule

could apply. *Miller v. Patel*, 740 F. App'x 383, 384 (4th Cir. 2018) (unpublished) (per curiam). Therefore, this Rule does not apply. Accordingly, the Court **DENIES** Mr. Saleh's Motion to Set Aside and Vacate.

## VI.

For the reasons discussed above, the Court **OVERRULES** the Objections [**Doc. 10**], **ADOPTS** the PF&R [**Doc. 8**], **DENIES** Mr. Saleh's Motion to Set Aside and Vacate [**Doc. 11**], and **DISMISSES** Mr. Saleh's Petition. [**Doc. 1**].

The Clerk is directed to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:        December 20, 2022

Frank W. Volk
United States District Judge